```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA
```

| | |
|---|---|
| DARRIN NEWMAN | CIVIL ACTION |
| VERSUS | NO. 04-2518 |
| KMJ SERVICES, INC. | SECTION "R" (2) |

### ORDER

Defendant KMJ Services moves for summary judgment in accordance with Rule 56 of the Federal Rules of Civil Procedure. For the following reasons, the Court DENIES defendant's motion.

### I. BACKGROUND

Plaintiff Darrin Newman alleges that he was injured when he fell from a personnel basket as he was being transferred from an oil platform to a supply ship. The basket was suspended from a crane mounted on the platform. The basket allegedly struck the starboard smokestack of the vessel, which caused Newman to fall onto the deck of the ship. Newman sued KMJ Services, the owner of the supply ship; El Paso Production Oil & Gas, the owner of

the platform and the time charterer of the supply ship; and Baker M/O, a contractor of El Paso.  Newman alleges that KMJ breached its duty of care to him by: (1) positioning the supply ship partially under the platform, which made the transfer more difficult; (2) leaving the deck of the supply ship cluttered; (3) failing to supervise the transfer operation, and (4) failing to flag the crane operator from the deck of the vessel to assist in placement of the personnel basket.

KMJ asserts that Newman is unable to prove that KMJ breached its duty of exercising reasonable care.  Further, KMJ asserts that Newman cannot prove that any such alleged breach was a legal cause of his injuries.  Because the Court finds that there are material issues of fact on the question of KMJ's breach of duty and causation of damages, the Court denies the motion.

II.   **LEGAL STANDARD**

Summary judgment is appropriate when there are no genuine issues as to any material facts, and the moving party is entitled to judgment as a matter of law.  *See* FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  A court must be satisfied that no reasonable trier of fact could find for the nonmoving party or, in other words, "that the evidence favoring the nonmoving party is insufficient to enable a

reasonable jury to return a verdict in her favor." *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The moving party bears the burden of establishing that there are no genuine issues of material fact, and the Court is obligated to draw all reasonable inferences in favor of the nonmoving party. *Hunt v. Rapides Healthcare System, LLC*, 277 F.3d 757, 764 (5th Cir. 2001).

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325; *see also Lavespere*, 910 F.2d at 178. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See Celotex*, 477 U.S. at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue exists for trial. *See id.* at 325; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1996).

**III. DISCUSSION**

KMJ asserts that all of the hazards that Newman alleges were open and obvious to him.  It also asserts that the crane operator aboard the platform, Steven Moore, was aware of all of the alleged hazards and did not attempt to correct them before transferring Newman.  KMJ further contends that there is no connection between its alleged acts or omissions and the harm suffered by Newman.  Thus, KMJ argues that Newman cannot prove that KMJ's acts or omissions were a legal cause of his injuries.

The owner of a ship in navigable water owes a duty to exercise reasonable care under the circumstances to all of its passengers.  *See Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 630 (1959).  The Fifth Circuit has held that shipowners are generally held to a high degree of care for the safety of their passengers.  *See Smith v. Southern Gulf Marine Co. No. 2, Inc.*, 791 F.2d 416, 420 (5th Cir. 1986).  This duty extends to the safety of passengers during their embarkation and disembarkation.  *Forrester v. Ocean Marine Indem. Co.*, 11 F.3d 1213, 1216 (5th Cir. 1993).  In determining the level of care a shipowner owes its passengers, the Court considers a number of factors bearing on the "circumstances of each case," including "the experience of the crew, the type of carrier involved, the dangers to the passengers peculiar to that type of carrier, the

4

carrier's degree of control over the passengers, and the carrier's ability to take precautions against such dangers." *Smith*, 791 F.2d at 421.  In the context presented here, the vessel owes specific duties when it receives passengers via transfer from a platform.

The transfer of a passenger from a platform to a vessel requires a coordinated effort between the crane operator and the boat crew.  Indeed, the captain of the vessel at issue admitted that a safe transfer requires teamwork between the boat crew and the crane operator.  (R. Doc. 91 at Ex. pt. 3, p. 73).  The captain stated that part of his crew's job is to direct the crane operator as to the placement of the personnel basket on the deck of the vessel.  (*Id*. at 74).  He admitted that his role as captain is to inform a deckhand of an impending transfer and the desired location of the personnel basket, in order for the deckhand to direct the crane operator as he transfers the basket to the vessel. (*Id*. at 72).  Further, the captain agreed that communication between the deckhand and the crane operator about where the basket should be placed is a "safety factor," that is even more important when the deck is crowded.  (*Id*. at 72, 74).

The record reveals issues of fact as to whether the vessel crew breached its duties and contributed to the accident.  The only witnesses to the accident were Newman, Steven Moore, the

crane operator, Charles Stanley, the captain of the vessel, and possibly Orand Terrebonne, the deckhand aboard the vessel. Although plaintiff has attempted to depose Terrebonne, he has failed to comply with a deposition subpoena to give testimony in this case.  (R. Doc. 91, Aff. of Victor Marcelo).

Moore testified at his deposition that before he initiated the transfer from the platform to the supply vessel, he radioed the vessel to notify the crew of the transfer.  (R. Doc. 115 at Ex. 2, p. 15-16).  Moore testified that someone responded that he would "be out in a few minutes," and that he waited a "couple of minutes" before he lifted Newman off the deck in the personnel basket.  (*Id*. at 16).  Although Captain Stanley testified that he had no contact with Moore before the accident, he admitted that he knew about the transfer beforehand because "someone" on the rig had notified him and told him where to take Newman after the transfer.  (*Compare* R. Doc. 91 at Ex. pt. 2 & 3, pp. 19, 70, *with id*. at 84).

Moore described the deck of the vessel as very crowded and unsafe to make the transfer.  (R. Doc. 115 at Ex. 2, p. 17). Moore testified that he was trying to place Newman in an area about six to eight square feet in size.  (*Id*. at 25).  Moore's recollection of whether and when he saw Terrebonne on the deck of the vessel during the transfer was not clear.  (*Compare id*. at

6

18, stating that he could not remember whether the deckhand aboard the vessel was looking at the basket as the basket came over, but he believed that the deckhand was "down there;," *with id.* at 53, stating that he did not notice whether the deckhand was on the deck until after the accident). In any case, Moore was certain that the deckhand did not signal or flag him during the transfer. (*Id.* at 18). Captain Stanley testified that he could not recall whether Terrebonne was on the deck during the transfer. (R. Doc. 91 at Ex. pt. 3, p. 71-72). He did not remember instructing Terrebonne as to where the basket should be placed, and Terrebonne did not speak to him about the matter. (*Id.* at 73, 93-94).

Moore testified that the accident happened after he lifted the personnel basket and began to direct it toward the deck of the vessel. (R. Doc. 115 at Ex. 2, p. 20-21). Moore said that he looked down at the deck of the vessel to see where he was going to place the basket, and when he looked back at the basket, he saw that it was too low and that it was headed for the smokestack. (*Id.* at 20-21). Moore testified that he "boomed up" a little, but the basket still "barely tap[ped]" the stack, causing the basket to spin. (*Id.*). Newman eventually fell off of the basket and crashed into the wheelhouse of the vessel. (*Id.* at 29).

KMJ asserts that Moore's actions absolve it of liability. It asserts that Moore decided to transfer Newman without requesting any action from Captain Stanley or the vessel's crew and that Moore was responsible for any errors in the transfer. Moore did admit that he was overtired, which caused him to "make a poor judgment." (*Id*. at 40). But Moore's *mea culpa* does not relieve the vessel of its duties to protect Newman during the transfer. Captain Stanley testified that from his position inside the "doghouse," he was able to see that the basket was dangerously low before it hit the smokestack. (R. Doc. 91 at Ex. 4, p. 22). Thus, Moore's error was visible from the vessel. It is a reasonable inference from these facts that had the deckhand been in place on the cargo deck to direct the transfer, he could have signaled Moore to stop the transfer immediately. Captain Stanley testified that if a deckhand believes a crane operator should stop moving the basket, the protocol is for him to put two fists in the air. (*Id*. at 77). Indeed, Captain Stanley admitted that he would have expected Terrebonne to use this signal if he had noticed that the basket was too low. (*Id*.). Captain Stanley believed that in this way Terrebonne could have stopped the transfer and that proper procedure required Terrebonne to be in position to prevent such an accident. (*Id*. at 97). Moore was looking at the deck of the vessel immediately before the accident

and it is not unreasonable to infer that if he had received a proper warning from the crew, he might have avoided the accident.

There is also an issue of fact as to whether the crowded deck conditions contributed to the accident. Moore testified that the deck of the vessel was so cluttered as to be unsafe, and that the transfer would have been easier had he had more room to place the basket. (R. Doc. 115 at Ex. 2, pp. 17-18). Thus while it is true that Moore had no qualms about beginning the transfer, it can be reasonably inferred that Captain Stanley could have made the conditions for the transfer safer by clearing space on the deck to create more room for the basket. Further, Captain Stanley admitted that the cluttered deck made having a deckhand present to direct the transfer even more important. That Moore did not ask Captain Stanley to make more room for the transfer does not relieve the vessel of its duty to exercise reasonable care for personnel coming aboard, particularly since Captain Stanley said he was aware of the transfer beforehand.

When the Court reviews the evidence under the Rule 56 standard, it must conclude that KMJ has not carried its burden to show that there are no genuine issues of material fact precluding the entry of summary judgment.

**IV. CONCLUSION**

For the foregoing reasons, the Court DENIES KMJ's motion for summary judgment.

New Orleans, Louisiana, this __16th__ day of August, 2006.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE